**Marc FELDMAN, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY; Vicki Weed, Defendants–Appellees.**

**No. 01–56718.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 2003.

Filed March 5, 2003.

Raymond C. Dion, Koletsky, Mancini, Feldman & Morrow, Los Angeles, CA, for the Appellant.

Wayne E. Beaudoin and James E. Fitzgerald, Luce, Forward, Hamilton & Scripps LLP, Los Angeles, CA, for the Appellee.

Before: FERGUSON, HALL, and BERZON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Marc Feldman appeals the district court's grant of summary judgment in favor of Allstate Insurance Company. The district court admitted, over Feldman's objection, testimony by his former wife, as well as taped conversations recorded in violation of California law. Based in part on this evidence, the district court held

that Allstate had not breached the implied covenant of good faith and fair dealing, and that Feldman was entitled to neither declaratory relief nor damages.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We REVERSE the district court's decision to admit the illegally-recorded conversations into evidence, but nonetheless AFFIRM the district court's grant of summary judgment on the issue of breach of the implied covenant of good faith and fair dealing. We REVERSE as to Feldman's claim for declaratory relief, and REMAND for further proceedings consistent with this opinion.

## FACTS

Appellant Feldman purchased a standard homeowner's insurance policy from Appellee Allstate Insurance Company, effective July 30, 1998. On February 22, 1999, Appellant's home was burglarized.

That evening, Appellant telephoned his then-wife, Lauren Feldman, to discuss the burglary and the items that had been stolen. At this time, the Feldmans were separated and engaged in an unpleasant custody dispute. In the context of the custody dispute, the Los Angeles Superior Court entered an order in 1997 authorizing the Feldmans to record telephone conversations with one another. Although the court order had expired on May 4, 1998, Lauren Feldman nonetheless secretly recorded the February 22, 1999 conversation.

Shortly after speaking with his wife, Appellant filed a police report with the LAPD, claiming the following losses: cash

($1,500), two jackets ($400 and $1,000), five paintings (total value $22,000), a diamond ring ($20,200), and a drive-way remote ($20). The next day, Appellant filed a claim with Allstate for all items except the ring, which was covered under a separate policy.

Allstate contacted Appellant on February 25, 1999 to request proof of the losses claimed. Appellant told Allstate that he did not personally purchase the paintings and referred Allstate to Lauren Feldman for more information. On March 10, 1999, the Feldmans spoke for a second time by telephone about the value of the stolen items. The conversation was again recorded by Lauren Feldman without Appellant's knowledge. On April 1, 1999, Appellant gave a sworn statement to Allstate, which declared that the stolen paintings, jackets, cash, and garage door opener were valued at a total of "approximately" $24,900.

On August 19, 1999, Lauren Feldman was examined under oath by Allstate. She testified that the jackets were valued at approximately $75 each and that the paintings were purchased for amounts between $50 and $1500. Lauren Feldman also produced tapes of her conversations with Appellant, which she incorrectly asserted were recorded pursuant to court order.

On August 30, 1999, Allstate informed Appellant by letter that his claim was being denied for misrepresentation of value[1] and failure to submit written documentation.[2] Appellant filed suit against Allstate in Los Angeles Superior Court on July 13, 2000. Allstate subsequently removed the

---

1. Allstate's policy contains a fraud exception that provides: "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."

2. Allstate's policy provides: "In the event of a loss to any property that may be covered by this policy, you must ... give us all accounting records, bills, invoices, and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies."

case to federal court, where both parties filed motions for summary judgment. On July 3, 2001, the district court entered its Order granting summary judgment to Allstate and denying summary judgment to Feldman. This appeal followed.

### STANDARDS OF REVIEW

■ The timeliness of a notice of appeal is reviewed *de novo*. *In re Delaney*, 29 F.3d 516, 517 (9th Cir.1994). We review a district court's grant of summary judgment *de novo*. *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 916 (9th Cir.2002). The determination of whether state or federal law applies in a diversity action is also reviewed *de novo*, and the *de novo* standard of review extends to the district court's construction of state law. *Olympic Sports Prod., Inc. v. Universal Athletic Sales Co.*, 760 F.2d 910, 912 (9th Cir.1985).

■ Generally, evidentiary decisions made in the context of summary judgment motions are reviewed for an abuse of discretion. *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 897 (9th Cir.1993). However, whether a party has waived an otherwise applicable privilege is a mixed question of law and fact and is reviewed *de novo*. *United States v. Amlani*, 169 F.3d 1189, 1194 (9th Cir.1999).

### JURISDICTION

■ As a threshold issue, this court must determine whether it has jurisdiction over the appeal. A notice of appeal "must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." FED. R. APP. P. 4(a)(1). Failure to timely file a notice of appeal necessarily results in dismissal for lack of appellate jurisdiction. *Scott v. Younger*, 739 F.2d 1464, 1466 (9th Cir. 1984).

The district court entered judgment in favor of Allstate on July 3, 2001. On July 13, Feldman filed a timely motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). On July 30, the district court rejected Feldman's motion for reconsideration for failure to comply with Local Rule 7.4.1, which requires a statement that the parties conferred prior to filing. The following day, Feldman filed a corrected Rule 59 motion. On September 10, the district court denied Feldman's motion. Feldman filed a notice of appeal on September 21.

Feldman's notice of appeal was not filed within 30 days of the district court's entry of judgment. However, a timely motion for reconsideration tolls the time for filing the notice of appeal until the district court rules on the motion. *Scott*, 739 F.2d at 1467; FED. R. APP. P. 4(a)(4). In order to be timely, a Rule 59(e) motion must be filed within 10 days after entry of the judgment to be appealed. The parties agree that Feldman's July 13 motion was filed in a timely manner, but dispute whether the motion's failure to comply with Local Rule 7.4.1 rendered it incapable of tolling the time for appeal.

■ The tolling provision of the Federal Rules of Appellate Procedure, Rule 4(a)(4), states only that a motion must be "timely," and is silent as to whether a motion must be otherwise valid in order to toll the time for appeal. The Ninth Circuit has previously refused to read a validity requirement into the Rule. *See Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1459 n. 1 (9th Cir.1988), *vacated on other grounds*, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 (1989) (holding that a procedurally invalid motion for JNOV can toll the time for appeal); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1420 (9th Cir.1984) ("Even if a motion is inartfully drawn or so defective that it could not

properly be granted it is still enough to toll the time for appeal.") (internal quotations omitted). In the spirit of these guiding precedents, we hold that Feldman's July 13, 2001 Rule 59(e) motion, despite its technical noncompliance with Local Rule 7.4.1, tolled the time for appeal until September 10, 2001, the date on which the district court ruled on its merits. Accordingly, Feldman's September 21 notice of appeal conformed to Rule 4(a). Having found jurisdiction over the instant appeal,[3] we turn to its merits.

### ADMISSIBILITY OF THE TAPED CONVERSATIONS

 In the district court, Appellant argued that admission of conversations recorded by Lauren Feldman without Appellant's knowledge would violate § 632 of the California Penal Code, which provides, "[e]xcept as proof in an action or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative, legislative, or other proceeding." CAL. PENAL CODE § 632(d). The district court rejected this argument as contrary to the law of this circuit. As the district court correctly noted, the Ninth Circuit has previously held that evidence obtained in contravention of state law is admissible in federal court, so long as no federal law is thereby violated. *E.g., United States v. Cormier,* 220 F.3d 1103, 1111 (9th Cir.2000); *United States v. Adams,* 694 F.2d 200, 201 (9th Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983) ("[E]vidence obtained from a consensual wiretap conforming to 18 U.S.C. § 2511(2)(c) is admissible in federal court proceedings without regard to

state law"). The instant case is distinguishable, however, because it is a diversity action. In diversity cases, a federal court must conform to state law to the extent mandated by the principles set forth in the seminal case of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Pursuant to *Erie* and its progeny, federal courts sitting in diversity apply state substantive law and federal procedural law. *Erie,* 304 U.S. at 78, 58 S.Ct. 817; *Wray v. Gregory,* 61 F.3d 1414, 1417 (9th Cir.1995).

 Most evidentiary rules are procedural in nature, and the Federal Rules of Evidence "ordinarily govern in diversity cases." *Wray,* 61 F.3d at 1417. However, the Federal Rules do not supplant "*all* state law evidentiary provisions with federal ones." *Id.* (emphasis in original). Rather, state evidence rules that are "intimately bound up" with the state's substantive decision making must be given full effect by federal courts sitting in diversity. *Id.* (citing *Erie*). Moreover, some state law rules of evidence "in fact serve substantive state policies and are more properly rules of substantive law within the meaning of *Erie.*" *Id.* (quoting 19 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4512 (1984)).

In *Wray,* the Ninth Circuit held that federal courts applying Nevada substantive law must also apply Nevada's rules regarding admissibility of the rulings of its medical malpractice screening panels. *Id.* at 1418. The Ninth Circuit noted that Nevada had established an integrated scheme for handling medical malpractice claims, in which the medical screening panels played a significant role. *Id.* Thus,

---

**3.** Feldman also appeals the district court's December 13, 2002 issuance of sanctions. However, Feldman's Notice of Appeal preceded the issuance of sanctions, and references

only "the final judgment and order of the district court, entered in this case on July 3, 2001." We have no jurisdiction to review the district court's issuance of sanctions.

Nevada's admissibility rules regarding the findings of its screening panels were properly characterized as substantive within the meaning of *Erie*. Id.

■■■ We hold that California Penal Code § 632, like the Nevada law at issue in *Wray*, is an exception to the general rule that the Federal Rules govern the admissibility of evidence in diversity cases. California Penal Code § 632 both makes taping a confidential conversation a crime and limits the admissibility of illegally intercepted conversations. CAL. PENAL CODE § 632(a), (d). The statute thereby embodies a state substantive interest in the privacy of California citizens from exposure of their confidential conversations to third parties. We also note that the California Constitution expressly guarantees a right to privacy,[4] and that "having one's personal conversations secretly recorded [and replayed] may well infringe upon the right to privacy guaranteed by the California Constitution." *Rattray v. City of National City*, 51 F.3d 793, 797 (9th Cir.1994). For these reasons, we hold that Penal Code § 632 is an integral component of California's substantive state policy of protecting the privacy of its citizens, and is properly characterized as substantive law within the meaning of *Erie*.[5]

■■■ Applying California law, the conversations at issue were recorded in contravention of § 632, and are not admissible. CAL. PENAL CODE § 632(d). However, testimony as to the content of a recorded conversation is admissible, to the extent that the witness or deponent "enjoys an untainted recall." *Frio v. Superior Court of Los Angeles*, 203 Cal.App.3d 1480, 1493, 250 Cal.Rptr. 819 (1988) ("Nothing in the Privacy Act can be read so as to conclude a party whose confidential communications have been recorded gains greater protection than if they had not been so intercepted.").

On remand, the district court may not admit the tapes themselves into evidence. However, the court should admit Lauren Feldman's testimony to the extent that she enjoys independent recollection of the contents of the conversations at issue. Finally, should the district court exclude Ms. Feldman's testimony or portions thereof, Allstate is entitled to introduce the recorded conversations, as necessary, to impeach Appellant's testimony. *Frio*, 203 Cal. App.3d at 1497, 250 Cal.Rptr. 819.

## WAIVER OF PRIVILEGE

■■■ Appellant argues that his conversations with Lauren Feldman are inadmissible as privileged marital communications. However, under California law the marital privilege is waived if "any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in

---

4. CAL. CONST. ART. 1, SEC. I ("All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.")

5. Our holding should not be construed to indicate that state exclusionary rules are always substantive and require application in federal diversity cases. As noted, California Penal Code § 632(d) is an integral part of a larger statutory scheme grounded in the fundamental privacy rights of California citizens. The primary motivation for the statute, it appears, is preventing both the taping and the use of such illicit tapes. Other rules excluding evidence solely to deter unlawful behavior may raise different considerations.

which the holder has the legal standing and opportunity." CAL. EVID. CODE § 912.

Appellant waived the privilege with respect to Lauren Feldman's deposition, explicitly stating, "Mr. Feldman is not asserting the confidential marital privilege for purposes of this deposition." The parties dispute whether, under California law, this selective waiver preserved Appellant's right to claim the privilege at trial.

At least one California court has recognized a party's ability to preserve a privilege through a limited waiver. In *People v. Aguilar*, 218 Cal.App.3d 1556, 267 Cal. Rptr. 879 (1990), *overruled in part on other grounds, People v. Ervin*, 22 Cal.4th 48, 90, 91 Cal.Rptr.2d 623, 990 P.2d 506 (2000), the California Court of Appeal held that waiver did not occur when a criminal defendant selectively waived the privilege for purposes of a hearing conducted under California Rule of Evidence § 402. *Aguilar*, 218 Cal.App.3d at 1564–65, 267 Cal. Rptr. 879. The trial court in *Aguilar* erroneously held that the defendant's testimony was admissible only if it met the requirements of California Evidence Code § 795, which sets forth requirements for admissibility of *non*-defendant witness testimony. *Id.* at 1563, 267 Cal.Rptr. 879. In order to comply with the trial judge's erroneous holding, defense counsel allowed the prosecution to examine privileged communications from the defendant's interviews with a hypnotist for the singular purpose of a hearing to determine whether post-hypnosis evidence should be admissible. *Id.* at 1565, 267 Cal.Rptr. 879. Defense counsel specifically stated that the waiver was not intended to apply to any aspect of discovery. *Id.* Under these circumstances, the California Court of Appeal held that the privilege was not generally waived. *Id.*

By contrast, in the instant case Appellant clearly waived his privilege at least with respect to one component of discovery—Lauren Feldman's deposition. Moreover, Appellant does not contend that this limited waiver was induced by any action on the part of the trial court. Thus, *Aguilar* is inapplicable.

California cases do not specifically address whether a party can waive privilege for purposes of one or more aspects of discovery, then fully recover the privilege for purposes of summary judgment or trial. However, we decline to read a broad "selective waiver" rule into the California law of privilege. Such a rule would serve no constructive purpose in the discovery process, and would contravene the general rule that once confidential communications are disclosed to a third party the privilege is forever lost. *See, e.g., Markwell v. Sykes*, 173 Cal.App.2d 642, 648, 343 P.2d 769 (1959) ("[I]t is well settled that once the privilege is waived it is gone for good.").

■ Moreover, even if a selective waiver could be recognized under the circumstances, Appellant responded to several questions regarding the allegedly confidential conversations during his February 5, 2001 deposition. Appellant was asked, "Do you have any recollection of telling [Lauren Feldman] . . . to be vague and evasive?" Rather than objecting on privilege grounds, Appellant answered, "the tapes speak for themselves . . . obviously the tape will be played before a jury, and the jury will make the decision." During the same deposition, Appellant specifically described portions of the recorded conversations, and also acknowledged that he and Lauren Feldman discussed the Allstate claim. A deponent does not necessarily lose a privilege by referencing a privileged communication. *People v. Hayes*, 21 Cal.4th 1211, 1266, 91 Cal.Rptr.2d 211, 989

P.2d 645 (1999). However, Appellant's responses to questioning during his February 5, 2001 deposition acknowledged not only the existence of the recorded conversations, but also their substance.

For these reasons, we find that Appellant waived the confidential marital communications privilege, and that the district court properly admitted Lauren Feldman's testimony.

## THE "GENUINE DISPUTE" DOCTRINE

 In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show (1) benefits due under the policy were withheld, and (2) the reason for withholding benefits was unreasonable or without proper cause. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (citing *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246 (1990)). Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was "a genuine dispute as to coverage." *Id.*

 Allstate correctly asserts that, under the Ninth Circuit's interpretation of California law, a genuine dispute may concern either a reasonable factual dispute or an unsettled area of insurance law. *Id.* at 994. *See also Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1293, 97 Cal.Rptr.2d 386 (2000) (holding that reliance on an expert opinion can create a genuine dispute). Specifically, a genuine dispute can be based "on the fraud language in the policy," even where the insured claims that the insurer's investigation was biased. *Guebara*, 237 F.3d at 996.

 Feldman attempts to distinguish *Guebara* on a variety of grounds. Feldman notes that Allstate denied his claim in its entirety, whereas the *Guebara* plaintiff received payment for the undisputed portion of her claim. However, this argument is entirely unavailing since Feldman's claim was disputed in its entirety. Feldman also argues that *Guebara* extended the genuine dispute doctrine only to factual disputes created by differing expert opinions. However, *Guebara* specifically declined to place such a limit on its holdings, clarifying that the genuine dispute doctrine "should be applied on a case-by-case basis." *Guebara*, 237 F.3d at 994.

Under *Guebara*, a genuine dispute does not exist where there is evidence that the insurer failed to conduct a thorough investigation. *Guebara*, 237 F.3d at 996. Allstate interviewed Appellant, interviewed Lauren Feldman *at Appellant's request*, and waited nearly six months for Appellant to provide written documentation of the value of any of the items claimed. Despite Appellant's argument to the contrary, Allstate had no affirmative duty to provide him with an opportunity to directly respond to Lauren Feldman's allegations before denying the claim. In view of Lauren Feldman's statements tending to indicate fraud and the complete lack of documentary support for Appellant's $24,900 valuation, it was not unreasonable for Allstate to deny the claim.

Appellant also argues that Allstate's investigation was insufficiently thorough because the matter was not submitted to an appraiser. Appellant's argument here is similarly unavailing. The Policy does not require Allstate to submit all disputed matters to an appraiser. Rather, it provides that "either party may make written demand for an appraisal." During the six months that his claim was pending, Appellant made no such demand. Moreover, it is not clear what items would be "appraised," given that the items had been stolen and Appellant was able to give only a very rough description of their appearance. Thus, Allstate's failure to submit

the matter to an appraiser does not render its investigation insufficiently thorough.

The parties agree that, when prompted for documentation as to value, Appellant referred Allstate to Lauren Feldman. It was thus not unreasonable for Allstate to rely on statements by Lauren Feldman as to the value of the stolen items. The parties also agree that Lauren Feldman told Allstate that Appellant had purposely inflated the value of the stolen goods. Finally, the parties agree that Appellant never amended or resubmitted his claim, even after he became aware that the goods may have been worth much less than $24,900. It was not unreasonable for Allstate to rely on these circumstances to conclude that Appellant's original claim may have been fraudulent. Such reasonableness is all that need be shown, even if it would be possible for a trier of fact to determine that Allstate ultimately is liable under the policy. *See Franceschi v. American Motorists Ins. Co.,* 852 F.2d 1217, 1220 (9th Cir.1988) (applying California law and stating that "a court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, even if the court concludes the claim is payable under the policy").

For these reasons, we affirm the district court's grant of summary judgment in favor of Allstate on the issue of breach of the implied covenant of good faith and fair dealing.

### DECLARATORY RELIEF

Feldman also appeals the district court's decision to grant summary judgment on the issue of declaratory relief as to whether the insurance policy at issue covers his claim. A genuine dispute is sufficient basis to conclude that Allstate did not act in bad faith by denying Appellant's claim. However, a genuine dispute does not dispose of Appellant's claim for declaratory relief. *See Franceschi,* 852 F.2d at 1220.

In order to affirm the district court's grant of summary judgment on the claim for declaratory relief, we must find that Appellant misrepresented the value of the stolen goods, as a matter of law. The basis for the district court's decision was that "it is undisputed that [Feldman] misrepresented the value of the stolen items." The district court relied in part on the content of illegally recorded conversation in reaching this conclusion. As noted above, the conversations are inadmissible under § 632 of the California Penal Code. Without the tapes, the issue of fraudulent misrepresentation is very much disputed and is essentially Appellant's word against Lauren Feldman's.

Viewing the facts in the light most favorable to Feldman, Lauren Feldman's testimony does not prove, as a matter of law, that Feldman actually submitted a fraudulent claim. We therefore reverse and remand on the issue of declaratory relief.

**AFFIRMED in part, REVERSED in part, and REMANDED.** Each party shall bear its own costs.