Kathryn **COOK**, James **Cook**, Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY,**
**and Does 1 through 100, Inclusive,**
**Defendants.**

**No. CV 03–6601 DSF.**

United States District Court,
C.D. California.

Aug. 31, 2004.

Stephen R. Golden, Pasadena, CA, for Plaintiffs.

Luce, Forward, Hamilton & Scripps LLP by Peter H. Klee, Charles A. Danaher, Joseph E. Foss, San Diego, CA, for Defendants.

## ORDER **GRANTING** MOTION FOR SUMMARY JUDGMENT

FISCHER, District Judge.

Defendant Allstate Insurance Company ("Allstate" or "Defendant") seeks summary judgment as to Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The Notice of Motion and Motion for Summary Judgment Or, In The Alternative, Summary Adjudication (the "Motion"), Memorandum of Points and Authorities In Support of the Motion (the "Memorandum"), Declarations of Joseph E. Foss ("Foss Dec."), Olivia Bissell and Susan Rossel In Support of the Motion ("Rossel Dec."), and Notice of Lodgement In Support of the Motion ("Notice of Lodgment") were filed July 9, 2004. Defendant's Statement of Uncontroverted Facts and Conclusions of Law In Support of the Motion ("Uncontroverted Facts") was lodged July 9, 2004. Plaintiffs Ka-

thryn Cook ("K.Cook") and James Cook's ("J.Cook") Opposition to the Motion (the "Opposition"), Declaration of Stephen R. Golden ("Golden") In Support of the Opposition ("Golden Dec."), Declaration of James Cook In Support of the Opposition ("J. Cook Dec."), Declaration of Kathryn Cook In Support of the Opposition ("K. Cook Dec."), and Declaration of Christopher Jay Griffith ("Griffith") In Support of the Opposition ("Griffith Dec.") were filed July 22, 2004. Defendant's Reply in Support of the Motion (the "Reply") and Declaration of Joseph E. Foss In Support of the Reply ("Reply Foss Dec.") were filed August 9, 2004. Defendant's Supplemental Declaration of Joseph E. Foss In Support of the Reply was filed August 11, 2004. The Court finds this matter appropriate for determination without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.

## I. PRELIMINARY ISSUES

### A. *Request For Continuance Pursuant to Rule 56(f)*

"Plaintiffs request a further opportunity to conduct depositions of Defendants to determine if there are any additional facts to corroborate Plaintiff's [sic] position that Allstate was intent on intimidating Plaintiffs with a thread [sic] of initiating a criminal investigation and/or criminal proceedings because of Plaintiffs going forward with their claim." Opposition at 12. Defendant argues that Plaintiffs have not met the standards of requesting a continuance of the Motion pursuant to Rule 56(f) and have failed to pursue discovery diligently. Defendant is correct.

Rule 56(f) requires that the party requesting a continuance of a summary judgment motion present affidavits setting forth the particular facts expected from the movant's discovery. *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986). Rule 56(f) allows, but

does not require, a court to grant a continuance. *Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades Dist. Council,* 817 F.2d 1391, 1395 (9th Cir.1987). The party seeking the continuance must show what specific facts it seeks to discover that will raise an issue of material fact. *Id.* However, the "mere hope that further evidence may develop prior to trial is an insufficient basis" for the court to grant a continuance pursuant to Rule 56(f). *Id.*

Plaintiffs have failed to file any affidavits pursuant to Rule 56(f), and have failed to suggest what specific facts they hope to discover that would support their allegations of intimidation. Plaintiffs do not dispute Defendant's contention that Plaintiffs have not served any discovery or taken a deposition since the Complaint was filed almost a year ago. Though the Rule 7–3 conference for this Motion took place on April 6, 2004, Motion at 2; Foss Dec. at ¶ 6, and despite implicitly acknowledging that they have insufficient facts to withstand a motion for summary judgment, Plaintiffs have not yet initiated discovery. The Court finds that Plaintiffs have failed adequately to support their request for a continuance. *See Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1005 (9th Cir. 2002) ("failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion"). For these reasons, the Court denies Plaintiffs' request. *See Brae Transp.,* 790 F.2d at 1443 ("Failure to comply with the requirements of Rule 56(f) is a proper grounds for denying discovery and proceeding to summary judgment").

### B. *Requests for Admission*

Plaintiffs admittedly did not timely respond to Requests for Admission, Opposition at 11, and the matters addressed by the Requests are now "conclusively established." Fed.R.Civ.P. 36(b). "Failure to

timely respond to requests for admissions results in automatic admission of the matters requested." *Federal Trade Comm'n v. Medicor, LLC,* 217 F.Supp.2d 1048, 1053 (C.D.Cal.2002). No motion to establish the admissions is needed because Rule 36 is self-executing. *Id.; see also O'Campo v. Hardisty,* 262 F.2d 621 (9th Cir.1958) (granting summary judgment on basis of admissions and pleadings). Any matter admitted pursuant to Rule 36 is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed.R.Civ.P. 36(b). "An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible." *Am. Auto. Ass'n v. AAA Legal Clinic,* 930 F.2d 1117, 1120 (5th Cir.1991).

The court may permit withdrawal or amendment when 1) presentation of the merits of the action will be served; and 2) the party who obtained the admission will not be prejudiced by withdrawal. *Sonoda v. Cabrera,* 255 F.3d 1035, 1038 (9th Cir. 2001). Prejudice is "not simply that the party who obtained the admission will not have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., because of the unavailability of key witnesses, because of the sudden need to obtain evidence" regarding the questions previously deemed admitted. *Hadley v. U.S.,* 45 F.3d 1345, 1348 (9th Cir.1995). Although a court may exercise its discretion in making its determination whether to allow an amendment or permit withdrawal, "[t]rial courts are advised to be cautious in exercising their discretion to permit withdrawal or amendment of an admission." *999 v. C.I.T. Corp.,* 776 F.2d 866, 869 (9th Cir. 1985).

Defendant properly served the Requests for Admissions on J. Cook and K. Cook on December 1, 2003. *See* Exhibit 17 ("Admission ___"); Foss Dec. at ¶ 6. The responses were therefore due January 6, 2004 (after considering the three calendars for mailing and the New Year's Day holiday). On February 10, 2004, more than a month after the deadline for Plaintiffs' responses passed, Defendant's counsel Stephen R. Golden ("Golden") advised Plaintiffs' counsel Joseph Foss ("Foss") that K. Cook was unable to respond to the discovery requests due to her hospitalization. Exhibit 3 to Reply Foss Dec. It is apparent from the content of this letter that Plaintiffs had never during the more than two months after service of the requests advised of any alleged hospitalization, asked Defendant for an extension of time for a response, or moved for an extension. Defendants attest that they have never received any responses. Foss Dec. at ¶ 6; Plaintiffs assert responses were served.[1] They attach the responses with proofs of service. In the proofs of service, Griffith, an employee of Plaintiffs' counsel, swears under penalty of perjury that the responses were served March 4, 2004. *See* Exhibit 1 and 2 to Griffith Dec. Nevertheless, without proffering any explanation for the significant discrepancy in his sworn statements, Griffith asserts in his declaration in support of this Motion that he mailed Plaintiffs' responses to the Requests on March 15, 2004. Griffith Dec. at ¶ 3.[2]

---

1. It is not clear why Plaintiffs served untimely responses but failed to seek a stipulation to withdraw or amend their admissions, or to file a motion seeking such relief.

2. Defendant submits other proofs of service attached to documents counsel *did* receive both before and after the dates on the questioned proofs of service. The discrepancies in the forms of the proofs of service are not lost on this Court, but are best addressed at a later time, if necessary.

■ The unanswered requests result in the Plaintiffs having admitted that they refused to submit to an examination under oath ("EUO"), that they caused the fire that damaged their property, that they were not damaged by Allstate's handling of their claim for the loss, and that there are no facts to support their allegations of breach of contract, breach of the implied covenant of good faith and fair dealing, and punitive damages claim. Admissions 1, 2, 3, 4, and 5.

The Requests have been conclusively established since January 6, 2004. In February, Plaintiffs' counsel wrote providing a purported explanation of why K. Cook (but not J. Cook) had not responded. In March Plaintiffs' counsel allegedly served untimely responses (which allegedly were never received). Yet Golden took no action until the filing of his Opposition to withdraw or amend the admissions. Even now, he has failed to file a motion, simply asking the Court to allow him more time to do so.

Further, Golden provides no explanation whatever for J. Cook's failure to respond. He declares that K. Cook was hospitalized "in early 2004," but provides no details such as the dates of hospitalization (only the time before January 6 would be relevant), medication, etc. that might have prevented her from assisting him in responding to relatively simple requests. Counsel also fails to provide any foundation for his assertion that K. Cook was hospitalized, and it is not obvious from the declaration. He does not say he visited her in the hospital, spoke to her there, etc. The Court notes that, although both Cooks supply their own declarations addressing other issues, neither states K. Cook was hospitalized. No hospital bills, etc. are provided. Thus there is no admissible evidence that establishes any reason for the failure of either Plaintiff timely to respond to the Requests.

Defendant has certainly expended substantial funds in making this Motion based in large part on the admissions, and filing its Reply. Plaintiffs themselves assert that Paula Baxter, an Allstate representative who allegedly made a statement on which the claim of bad faith is based, can no longer be found. J. Cook Dec. at ¶ 10; K. Cook Dec. at ¶ 2. Plaintiffs have known since the Local Rule 7–3 conference in early April that Defendant intended to make this Motion but still have failed to file an appropriate motion to withdraw or amend the admissions. Plaintiffs' request that the Court continue this hearing to allow them time to make a motion to withdraw or amend the admissions is denied. The "default" admissions can be used to support this Motion. See U.S. v. Kasubo-ski, 834 F.2d 1345, 1349–50 (7th Cir.1987).

### C. Failure to File a Statement of Genuine Issues

■ Plaintiffs have also failed to file a Statement of Genuine Issues pursuant to Local Rule 56–2. When the Court's Courtroom Deputy Clerk called to inquire, counsel said he would try to "get to it" within the next week He never did so. Defendant contends that because Plaintiffs failed to file a Statement of Genuine Issues, "all the facts set forth in Allstate's Moving papers are 'admitted to exist without controversy,'" and the Opposition should therefore not be considered. Reply at 2–3. Pursuant to Local Rule 56–3, the Court assumes "the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Issues" and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56–3 (emphasis added). Plaintiffs have filed declarations and exhibits. Though the Local Rules should have been followed, and failure to do so pro-

vides further support for granting the Motion, the Federal Rules of Civil Procedure appear to require only that affidavits be submitted. The Court therefore considers the Opposition and declarations in an abundance of caution.

## II. UNCONTROVERTED MATERIAL FACTS [3]

On December 17, 2001, a fire damaged the Cooks' house and personal property. Exhibit 2.[4] Investigators concluded that the fires [5] were not caused by accident. ¶ 2. The arson investigator from the Los Angeles County Sheriff's Department concluded that K. Cook started the fire. ¶ 3. K. Cook gave the arson investigator from the L.A. County Sheriff's Department at least three or four different explanations for how the fire started, none of which was corroborated by the investigation. ¶ 4.

At the time of the fire, Plaintiffs' property was insured under an Allstate homeowners policy. ¶ 5. On December 18, 2002 Plaintiffs reported their claim to Allstate. ¶ 6. Between December 2001 and May 2002, Allstate tried unsuccessfully to obtain a recorded statement from K. Cook. ¶ 7.[6]

On April 8, 2002, Allstate sent Plaintiffs a letter notifying them that it was exercising its right under the policy [7] and the California Insurance Code to take the Cooks' EUOs, and that it had retained coverage counsel. ¶ 8. On May 6, 2002, Allstate's counsel sent a letter to Plaintiffs' counsel [8] indicating that the Cooks needed to provide certain documents and complete the EUOs. Exhibit 11. On May 15, 2002, Allstate's counsel requested that Plaintiffs produce certain documents by May 24, 2002 so that the EUOs scheduled for May 28 and 29, 2002 could go forward. ¶ 10. However, the Cooks did not produce any documents and allegedly refused to appear for their EUOs.[9] *Id.*

On May 30, 2002, Allstate's counsel sent another letter to Plaintiffs' counsel [10] rescheduling the EUOs to June 25, and June 27, 2002 and requesting that the Cooks produce documents by June 17, 2002. ¶ 11. Allstate's counsel reminded Plaintiffs' counsel that the Cooks had contractual obligations pursuant to the policy and that if they continued to fail to cooperate, Allstate would likely decline the claim and

---

3. Unless otherwise stated, these facts are undisputed. References to the Uncontroverted Facts are by paragraph number only.

4. References to the Exhibits are to those attached to the Notice of Lodgement. These documents are authenticated in the declarations.

5. Although Defendant refers to "a" fire occurring at Plaintiffs' home, Allstate's investigator concluded that there were at least two fires set inside Plaintiffs' home. Exhibit 3.

6. J. Cook states that he made a recorded statement to Allstate's investigator in January 2002 regarding the fire. J. Cook Dec. at ¶ 3.

7. The Policy states: "In the event of a loss to any property that may be covered by this policy, you must ... f) as often as we reasonably require: 2) at our request, submit to

examinations under oath, separately and apart from any other person defined as you or insured person and sign a transcript of the same." Exhibit 7.

8. This letter is addressed to Christopher Chaney, apparently the Cooks' counsel at that time.

9. J. Cook states that during March 2002, they "made many appointments with Allstate for an EUO which was cancelled by Allstate." J. Cook Dec. at ¶ 13. J. Cook also states that "[n]ot one did [they] every [sic][say] that [they] would not make [an EUO]." *Id.* at ¶ 11. K. Cook asserts that she was not told about the EUO until after the scheduled date. K. Cook Dec. at ¶ 3.

10. The letter is addressed to Patricia Depew, apparently the Plaintiffs attorney at that time.

close their file. ¶ 13. Plaintiffs did not produce any documents and did not attend the EUOs on June 25 and 27.[11] *Id.*

On June 27, 2002, Allstate's counsel sent another letter to Plaintiffs' counsel requesting that the Cooks produce documents by July 23, 2002 so that the EUOs could go forward on July 30 and July 31, 2002. ¶ 12. However, for the third time, Plaintiffs did not produce any documents and failed to appear for their EUOs. *Id.*

On August 2, 2002, Allstate's counsel sent a letter to the Cooks offering one last opportunity for them to cooperate. ¶ 13. Allstate's counsel rescheduled the EUOs for August 19, 2002 and requested that they produce documents at that time. *Id.* Plaintiffs again failed to produce the documents or submit to the EUOs.[12] *Id.*

On August 23, 2002, after nine months of trying to obtain statements from the Cooks, Allstate sent Plaintiffs' counsel a letter denying their claim "based on [their] failure and/or refusal to cooperate with the terms and conditions of the subject policy of insurance." ¶ 14. The letter detailed the Cooks' obligations under the policy and Allstate's unsuccessful attempts to obtain documents from them, take their recorded statements, and obtain their EUOs. *Id.*

As previously discussed, Plaintiffs failed timely to respond to Allstate's Request for Admissions served on December 1, 2003, ¶ 15, and the facts contained therein were "conclusively established." Fed.R.Civ.P. 36(b).

### III. LEGAL STANDARD

A motion for summary judgment provides a procedure for terminating trial actions "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although summary judgment deprives a party of the right to a jury trial, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.*

In deciding whether to grant summary judgment, the district court need only consider evidence set forth in the moving or opposing papers and the parts of the record specifically referred to therein. *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (summary judgment proper though genuine issue of fact raised in affidavit that was on file but not mentioned in opposing papers filed with the court). The court must view the evidence presented in the light most favorable to the opposing party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–55, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the

---

**11.** K. Cook states that she did not know about the June 2002 EUOs. K. Cook Dec. at ¶ 3.

**12.** J. Cook claims that they "have been willing to appear for an EUO since August of 2002."

J. Cook Dec. at ¶ 15. K. Cook asserts that they agreed to submit to an examination in August 2002. K. Cook Dec. at ¶ 3.

summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. 2505. If the non-moving party presents evidence that is "merely colorable" or is not "significantly probative," summary judgment may be granted. *Id.* Moreover, a "Rule 36 admission ... trump[s] conflicting evidence" on summary judgment. 11 *Moore's Federal Practice* § 56.14[2][d] (Matthew Bender 3d Ed.2004), citing *Appley v. West,* 929 F.2d 1176, 1179–80 (7th Cir.1991) (failure to challenge admissions until reply brief or oral argument on appeal is "too late").

A district court may not grant summary judgment, however, where any material fact is in genuine dispute. Fed.R.Civ.P. 56(c). To survive a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial ...." Fed.R.Civ.P. 56(e); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. ANALYSIS

### A. *Breach of Contract*

■ "An insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy." *Brizuela v. CalFarm Ins. Co.,* 116 Cal. App.4th 578, 587, 10 Cal.Rptr.3d 661 (2004), *citing Hickman v. London Assurance Corp.,* 184 Cal. 524, 534, 195 P. 45 (1920) (insured's refusal to submit to an examination was not justified and therefore the insured forfeited the rights to

benefits under the policy). "Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath and the production of documents, the breach generally results in a forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy." *Brizuela,* 116 Cal. App. 4th at 670, 10 Cal.Rptr.3d 661 (citation omitted). The reasonableness of an insurer's conduct in processing a claim is "a question of law appropriate for determination on motion for summary judgment when only one conclusion about the conduct's reasonableness is possible." *West v. State Farm Fire and Cas. Co.,* 868 F.2d 348, 351 (1988).

Defendant contends that it is entitled to summary judgment as a matter of law because Plaintiffs failed to appear at four scheduled EUOs. Plaintiffs admit that they "refused to submit to an examination under oath during the CLAIM."[13] Admission 1. Plaintiffs contend that they "were willing to appear for an oral examination at least since September 2002 when Plaintiff's current counsel advised them to go forward with the examination ...." Opposition at 6.

■ It is undisputed that the Policy provides that the insured must submit to EUOs "as often as [the insurer] reasonably requires." J. Cook does not dispute that Allstate asked for an EUO in March 2002. J. Cook at ¶ 4. However, J. Cook asserts that they "needed to get legal counsel" for the EUO and had a "great deal of trouble finding legal counsel for the first scheduled EUO." *Id.* J. Cook also maintains that he considered Allstate's request for documents beginning in May 2002, "as an attempt to intimidate [the Cooks] from filing their claim." *Id.* at ¶ 6.

---

**13.** CLAIM is defined to refer to the claim made by the Cooks concerning the fire.

J. Cook further asserts that "[d]uring the month of March 2002, we made many appointments with Allstate for an EUO which was *cancelled by Allstate.*" *Id.* at ¶ 13 (emphasis added).[14] Moreover, J. Cook states that "[s]ince learning of our rights from our legal counsel, Stephen R. Golden, we have been willing to appear for an EUO since August of 2002." *Id.* at ¶ 15. To the extent these allegations contradict the Admission, the Court will not consider them. To the extent they purport to provide "excuses" that are legally insufficient, they do not raise a triable issue. In any event, J. Cook has also admitted that he or someone acting on his behalf "caused the fire," Admission 2, that he was "not damaged in any way" by Defendant's handling of the claim, Admission 3, and there are no facts to support his allegation that Defendant breached its insurance contract. Admission 4. He cannot maintain a claim for breach of contract.

K. Cook states that with respect to the first scheduled EUO, she "was not told until after. [She] already had a previous appointment with [her] neurosurgeon and had waited a month for that appointment." K. Cook Dec. at ¶ 3. With regard to the second date, K. Cook maintains that it was scheduled "without discussing with [her]," that it was made "at the last minute," and that she has "a letter from a medical doctor advising [her] not to attend." *Id.* (The letter has not been provided.) With respect to the June 2002 EUO, K. Cook states that she had no knowledge of the dates but later asserts that "[u]pon finding out the scope of the examination that Allstate wanted to conduct in June of 2002, I was hesitant to undergo such intimidation until I could contact a knowledgeable attorney who could advise me he would be able to protect me from any abuse Allstate was intending." *Id.* (As noted above, Allstate was communicating with the Cooks through an attorney as early as May 2002. ¶ 10.) With respect to the fourth attempt by Allstate to schedule an EUO, K. Cook maintains that her attorney advised her and her husband that he would protect them, and therefore they "agreed to an examination in August 2002." *Id.*

There is also evidence that Plaintiffs' counsel submitted a letter to Allstate's counsel in September 2002 to "mutually schedule an examination for [his] clients to be given under oath," and stated that his "clients would provide the documents." Golden Dec. at ¶ 3. There is no suggestion that documents were ever produced. On September 23, 2002, Allstate's counsel informed Golden that the claim was closed and that he would be advised if Allstate decided to reopen the claim. *Id.* at ¶ 4. Plaintiffs' attorney submitted another letter offering his clients to appear for an EUO in March 2004,[15] well after this case

14. This testimony seems completely inconsistent with the Cooks' other testimony that they would not submit to an examination until they had counsel, and still didn't have counsel in May 2002 (J. Cook Dec. at ¶ 11), and have been willing to submit to an EUO since August 2002. (J. Cook Dec. at ¶ 15). However, the Court, as it must on a motion for summary judgment, declines to consider any credibility issues with respect to this evidence. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Moreover, the Court will not weigh conflicting evidence for purposes of this Motion. *See T.W. Elec. Service, Inc. v. Pacific*

*Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

15. Again, it appears the evidence is conflicting. On October 15, 2002, Plaintiffs' counsel informed Golden that Allstate would agree to move forward with the EUOs if Plaintiffs produced documents. Exhibit 4 to Foss Dec. Defendant asserts that Plaintiffs did not produce the requested documents. Reply at 6. Thereafter, on February 10, 2004, Golden advised Foss that his clients "did not 'cooperate' in turning over documents and submitting to the examination under oath [because of Allstate's] threats to use such information to

was filed. *Id.* at ¶ 5. To the extent these allegations contradict the Admissions, the Court will not consider them. To the extent they purport to provide "excuses" that are legally insufficient, they do not raise a triable issue.[16] In any event, K. Cook has also admitted that she or someone acting on her behalf "caused the fire," Admission 2, that she was "not damaged in any way" by Defendant's handling of the claim, Admission 3, and there are no facts to support her allegation that Defendant breached its insurance contract. Admission 4. She cannot maintain a claim for breach of contract.

### B. Tortious Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs assert a cause of action for tortious breach of implied covenant of good faith and fair dealing. Plaintiffs contend that Allstate's refusal to pay for their losses and its "pattern of intimidating conduct" were in bad faith.

■■■ "The covenant of good faith and fair dealing is implied in law to assure that a contracting party 'refrain[s] from doing anything to injure the right of the other to receive the benefits of the agreement.'" *Love v. Fire Ins. Co.,* 221 Cal.App.3d 1136, 1153, 271 Cal.Rptr. 246 (1990), *citing Egan v. Mutual of Omaha Ins., Co.,* 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). "[W]here benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because it frustrates the insured's *primary* right to receive the benefits of his contract—i.e. prompt compensation for losses." *Fraley v. Allstate Ins. Co.,* 81 Cal.App.4th 1282, 1292, 97 Cal. Rptr.2d 386 (2000) (citation omitted). A breach of the implied covenant requires that: 1) benefits due under the policy have been withheld; and 2) the reason for withholding benefits was unreasonable or without proper cause. *Love,* 221 Cal.App.3d at 255, 270 Cal.Rptr. 425. Plaintiffs must "show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibility, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectation of the other party thereby depriving that party of the benefits of the agreement." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,* 90 Cal.App.4th 335, 346, 108 Cal.Rptr.2d 776 (2001) (citation omitted).

■■■ "Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was a 'genuine dispute as to coverage.'" *Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 669 (9th Cir.2003) (citation omitted). The reasonableness of the insurer's decisions and actions must be evaluated at the time that they were made. *Chateau Chamberay,* 90 Cal.App.4th at 347, 108 Cal.Rptr.2d 776. The Ninth Circuit has determined that a genuine dispute as to coverage may concern either a reasonable factual dispute or

---

institute criminal proceedings against [Plaintiffs]." Exhibit 3 to Foss Dec.

**16.** Even in the absence of the admissions, Plaintiffs' excuses are of questionable value in light of *Hickman,* 184 Cal. at 532–33, 195 P. 45and *Globe Indem. Co. v. Super. Ct. of Los Angeles,* 6 Cal.App.4th 725, 8 Cal.Rptr.2d 251 (1992).

an unsettled area of insurance law. *Feldman*, 322 F.3d at 669. The genuine dispute doctrine is applied on a case-by-case basis. *Id.* (citation omitted). It may be applied where the insurer denies a claim based on opinions of experts. *Fraley*, 81 Cal.App.4th at 1292, 97 Cal.Rptr.2d 386.

■ Plaintiffs fail even to address Defendant's contention that there was a genuine dispute as to the insurer's liability under the policy for the claim asserted by Plaintiffs. It is uncontroverted that Allstate's investigators concluded that the fires were not caused by accident.[17] The Los Angeles County Sheriff's Department arson investigator concluded that the fire was started by K. Cook. Exhibit 2. There are no allegations that Allstate did not conduct a thorough investigation, and no allegation of a biased investigation. There is no criticism of the Sheriff's Department report. Rather, Plaintiffs claim that they did not burn their residence (but have admitted to causing the fire, Admission 2), that Allstate failed to pay Plaintiffs' losses and that Allstate's actions were intimidating. K. Cook gave four different stories about the cause of the fires. It is also undisputed that K. Cook refused to make a recorded statement from December 2001 to May 2002, and that Plaintiffs failed to provide the requested documents to Allstate. It was not unreasonable for Allstate to rely on the investigations to conclude that Plaintiffs' claim may have been fraudulent. In view of these facts, the Court finds as a matter of law that there was a genuine dispute as to coverage. Based on the genuine dispute, Allstate did not act in bad faith. In fact, Allstate promptly advanced the Cooks $5,000 for personal property damage and $500 for living expenses. Rossel Dec. at ¶ 5. Although Allstate issued a check to the Cooks to settle their claim, it later canceled the check due to the Cooks' refusal to cooperate. *Id.* at ¶ 14.

Because of the genuine dispute as to Defendant's liability under the policy, the Court concludes that Defendant cannot be liable for breach of the implied covenant even if it might be liable for breach of contract. *Chateau Chamberay*, 90 Cal. App.4th at 347, 108 Cal.Rptr.2d 776 (insurer denying or delaying payment of policy benefit due to the existence of a genuine dispute with its insured as to existence of coverage liability is not liable in bad faith even thought it might be liable for breach of contract).

Defendant further asserts that it was not unreasonable for Allstate to deny the claim based on the Cooks' refusal to cooperate and submit to EUOs. The Cooks admitted that they refused to submit to EOUs. Admission 1. Plaintiffs contend that "there were indications from Defendants that if Plaintiffs went forward with their claim, Defendants would seek to have Plaintiffs prosecuted." Opposition at 8. Plaintiffs' assertion is unsupported by the evidence. Rather, the evidence shows that the Defendant was investigating the claim and questioning Plaintiffs. J. Cook at ¶¶ 7, 10 and 12. That Defendant's agents allegedly told Plaintiffs that "if their investigation [found them] at fault of the fire," Allstate would "not pay the claims and would prosecute [them]"(even if true) does not show that Allstate acted in bad faith. *Id.* at ¶ 7. Moreover, even if Plaintiffs were told that they were being investigating for arson, it would not show bad faith. *Id.* at ¶ 12; *see also* K. Cook at ¶ 2.

17. The policy does not "cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." Exhibit 7. The policy also does not cover losses to the property because of intentional or criminal acts of the insured. *Id.*

Plaintiffs' assertion that Defendant was "not seeking to evaluate Plaintiffs' claim, but to intimidate" is also without support. J. Cook makes only the conclusory claim that he "considered [the requests for certain documents] as an attempt to intimidate [him and his wife] from filing [their] claim." J. Cook at ¶ 6. K. Cook states that "Allstate hired Paula Baxter and Karen Eskew to remove, store, and clean the contents of our home. These individuals indicated to [her] that Allstate was going to see that [she] was investigated if [she] went forward with [the] claim." K. Cook at ¶ 2. Beyond these alleged statements, Plaintiffs fail to show *any* evidence of bad faith. Indeed, they admit they have "no facts to support [their] allegation that [Defendant] breached the implied covenant of good faith and fair dealing." Admission 5.

Plaintiffs also assert that Defendant's request for documents, including for their financial records, income tax filings and a record of all their assets, shows that Allstate intimidated them. Plaintiffs claim that these requests were an attempt to invade their financial privacy. The record shows that Allstate requested certain tax returns for certain years to the extent Plaintiffs would voluntarily permit. Exhibits 12–15; Exhibit 4 to Foss Dec. Allstate also advised Plaintiffs that the tax documents were privileged "but that they may be necessary to process or determine the claim." *Id.* Additionally, based on the record before this Court and because there evidence that Plaintiffs had committed arson, the requests for certain financial information during the one year period immediately preceding the date of loss does not raise a triable issue as to bad faith. *See Chateau Chamberay,* 90 Cal.App.4th at 347, 108 Cal.Rptr.2d 776 ("an insurer is entitled to give its own interests consideration when evaluating the merits of an

insured's claim"). Plaintiffs have presented no authority to show an "undue burden," and fail to show that these requests were unreasonable based on the facts of this case and the concern that Plaintiff K. Cook had burned the property.

Plaintiffs further state that they were not advised of their rights under an EUO, including the right to have counsel present.[18] Plaintiffs fail to show how this was the result of "abuse and intimidation" or how it constitutes a breach of the covenant of good faith and fair dealing. The Court finds that Plaintiffs' conclusory statements do not raise a genuine issue of material fact that Allstate acted in bad faith. Plaintiffs have admitted they have no such claim. Admission 4.

Summary judgment as to this claim is granted.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

---

18. Plaintiffs appear to rely on Cal. Ins.Code § 2701.1, but that section applies to policies issued or renewed after January 1, 2002. The fire here occurred on December 17, 2001.