**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| DAIRYAMERICA, INC., a California Corporation,<br><br>              Plaintiff - Appellant,<br><br>   v.<br><br>NEW YORK MARINE AND GENERAL INSURANCE COMPANY and CRUMP INSURANCE SERVICES d.b.a. SOUTHERN MARINE & AVIATION UNDERWRITERS et al.,<br><br>              Defendants - Appellees. | No. 09-17368<br><br>D.C. No.1:07-cv-00537-LJO-SMS<br>Eastern District of California,<br>Fresno<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued November 1, 2010
Resubmitted December 3, 2010
San Francisco, California

Before: GOULD and IKUTA, Circuit Judges, and MAHAN,[**] District Judge.

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     [**]     The Honorable James C. Mahan, United States District Judge for the District of Nevada, sitting by designation.

Appellant DairyAmerica is a company engaged in the shipment of powdered milk. Appellee New York Marine and General Insurance Company ("NY Marine") contracted with DairyAmerica to provide ocean marine cargo insurance, and appellee Crump Insurance Services d.b.a. Southern Marine & Aviation Underwriters ("Southern Marine") was the underwriter for that insurance policy. The instant dispute involves DairyAmerica's loss of fifty-nine loads of powdered milk stored at a warehouse in Mississippi, which occurred while a temporary insurance binder was in effect, but before the formal insurance policy from NY Marine had issued.

The NY Marine binder purports to cover "[l]awful goods and/or merchandise consisting principally of, but not limited to, milk powder of every kind and description and other goods incidental to the business of the assured . . . and/or all other interests handled by the assured in the course of their business . . . whether in transit or store or elsewhere anywhere in the world." (Supplemental Excerpts of R. 266). However, the formal policy states: "This insurance attaches to all shipments commencing on or after August 11, 2005 and prior to October 1, 2006. . . ." (Supplemental Excerpts of R. 224). Twenty-three of the fifty-nine lost shipments had been sent to the warehouse before the effective date of the policy,

whereas the other thirty-six arrived at the warehouse after the policy's effective date. Accordingly, the dispute centers on whether DairyAmerica's agreement with NY Marine covered the twenty-three, pre-policy-date shipments.

The district court held that the insurance binder was the controlling document at the time of the loss and that industry custom controlled the interpretation of that document. In divining industry custom, the district court evaluated conflicting expert testimony submitted by the parties and ultimately granted summary judgment in favor of appellees NY Marine and Southern Marine. We reverse and remand.

This court reviews a grant of summary judgment de novo. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665 (9th Cir. 2003). Therefore, to uphold a grant of summary judgment, this court must find that based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Additionally, this court must draw all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The district court erred when it granted summary judgment in favor of the

appellees and found that no genuine issue of material fact existed in this case. Under California law, a court must give both parties the opportunity to present extrinsic evidence as to the parties' intent in drafting a contract. *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988) (citing *Pacific Gas & Elec. Co. V. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33 (1968)). Where a case involves the scope of insurance coverage, the issue of intent is resolved using extrinsic evidence of industry custom. *Ermolieff v. R.K.O. Radio Pictures*, 19 Cal. 2d 543, 550 (1942).

Here, both parties presented extrinsic evidence as to custom in the marine cargo insurance industry in the form of expert testimony. The district court did not exclude appellant's expert's opinion, and that opinion meets the standard set forth in the Federal Rules of Evidence. *See* FED. R. EVID. 702 (allowing a qualified expert to testify when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"). Appellant's expert testified as to his understanding of marine cargo insurance industry custom, which qualifies as specialized knowledge. Both parties assert that testimony on industry custom would assist the trier of fact in understanding the meaning of the policy at issue.

Accordingly, drawing all justifiable inferences in the appellant's favor, the

case would more properly be submitted to a trier of fact for adjudication, as it involves weighing the relative probative value of the experts' opinions. *See Anderson*, 477 U.S. at 255 (holding that credibility determinations and weighing of the evidence are jury functions).

**REVERSED AND REMANDED.**

*DairyAmerica, Inc. v. N.Y. Marine & Gen. Ins. Co. et al.*, No. 09-17368

IKUTA, J., dissenting.

In concluding that there is a genuine issue of material fact as to whether the insurance issued by N.Y. Marine to DairyAmerica covered shipments that commenced before the policy's inception date, the majority ignores controlling California law. Insurance binders like the one issued by N.Y. Marine in this case are incomplete, informal, and temporary contracts that are "subject to the terms and conditions of the policy to be issued or of the policy ordinarily used by the company, or, if there is a standard policy in the jurisdiction, according to the terms and conditions of that policy, and it is presumed that the parties contemplated such a policy, containing such conditions and limitations." *Parlier Fruit Co. v. Fireman's Fund Ins. Co.*, 311 P.2d 62, 71 (Cal. Ct. App. 1957) (quoting 44 C.J.S. § 230, at 958); *see also Chi. Title Ins. Co. v. AMZ Ins. Servs., Inc.*, 115 Cal. Rptr. 3d 707, 725 (Ct. App. 2010); *Nat'l Emblem Ins. Co. v. Rios*, 79 Cal. Rptr. 583, 586–87 (Ct. App. 1969); 16 Williston on Contracts § 49:53 (4th ed. 2010).

Here N.Y. Marine's formal policy stated that the "insurance attaches to all shipments commencing on or after August 11, 2005 and prior to October 1,

1

2006. . . ." Thus, the policy did not cover shipments commencing before August 11, 2005. Nor has DairyAmerica offered any evidence that the standard policy ordinarily used by N.Y. Marine, or California's standard ocean marine cargo policy, covers goods in transit before the policy's inception. The binder did not alter the terms of the formal policy: it did not state that it covered goods in transit, and no language in the binder is susceptible to that interpretation. Therefore, under California law, the terms and conditions of the formal policy are controlling.

The only evidence that DairyAmerica offers to support its contention that the insurance policy covers shipments that commenced before the policy's inception date is an expert's statement that a "'Lost or Not Lost' clause as used in ocean marine insurance provides that the insurer will pay even if the loss insured against has occurred prior to the effective date of the insurance." But the "lost or not lost clause" in DairyAmerica's binder states only that the "Geographical Limits" of the insurance includes goods "lost or not lost, from ports and/or places in the world directly or via ports and/or places in any order" including shipment of the goods by land, air or water and while the goods are in storage. The clause does not state that it covers goods in transit, and cannot reasonably be interpreted as doing so.

Since DairyAmerica did not obtain an insurance policy covering shipments that commenced before August 11, 2005, and there is not a genuine issue of

2

material fact as to this issue, I would affirm the district court.